UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
CLARISSA GOLDSMITH,

                     Plaintiff,

            -against-

THE CITY OF NEW YORK; PRISON HEALTH
SERVICES; PHS CORRECTIONAL HEALTHCARE;
P.H.S MEDICAL SERVICES, P.C.; DR.
TREVOR PARKS,

                     Defendants.
------------------------------------------------------------------X

10 Civ. 5781(JGK)

**SECONDED AMENDED COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff, by her attorneys, Emery Celli Brinckerhoff & Abady LLP, as and for her Complaint against defendants, alleges as follows:

## INTRODUCTION

1. This is a civil rights action brought pursuant to the United States Constitution, as amended, and 42 U.S.C. Section 1983; it seeks redress for defendants' deprivation, under color of state law, of plaintiff's rights, privileges, and immunities secured by the Constitution and laws of the United States.

2. This action is brought because plaintiff was repeatedly forced to undergo non-consensual gynecological exams while a pre-trial detainee at the Department of Correction ("DOC") pursuant to defendants' wholesale policies, practices and customs of forcing all female detainees, including plaintiff, to undergo a forced gynecological exam. Such exams are humiliatingly invasive and unconstitutional.

3. Plaintiff seeks compensatory and punitive damages for the injuries caused

by defendants' unlawful conduct.

## JURISDICTION AND VENUE

4. This action arises under the Fourth, Fifth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

5. The jurisdiction of this Court is predicated upon 28 U.S.C. §§ 1331, 1343(4).

6. The acts complained of occurred in the Southern District of New York and venue is lodged in this Court pursuant to 28 U.S.C. § 1391(b).

## JURY DEMAND

7. Plaintiff demands trial by jury in this action.

## PARTIES

8. Clarissa Goldsmith is a 47-year-old woman who resides in New York City.

9. Defendant City of New York ("City") is a municipality organized and existing under the laws of the State of New York. At all times relevant hereto, defendant City, acting through the Department of Correction ("DOC"), was responsible for the policy, practice, supervision, implementation, and conduct of all DOC matters and was responsible for the appointment, training, supervision, and conduct of all DOC personnel. In addition, at all relevant times, defendant City was responsible for enforcing the rules of the DOC, and for ensuring that DOC personnel obeyed the Constitution and laws of the United States.

10. Defendant Prison Health Services is a corporation that, at all times relevant to the Complaint, on information and belief, contracted with the City to provide health

services to detainees in DOC facilities and is incorporated and with its principal place of business outside of New York State. On information and belief, Prison Health Services is organized under the laws of Tennessee, with its principal place of business in Tennessee. Prison Health Services engages in business in New York and is subject to personal jurisdiction in this district. Moreover, at all times relevant hereto, Prison Health Services has acted under the supervision, control and direction, and on behalf of the City.

11. Defendant PHS Correctional Healthcare is a corporation that, on information and belief, was formerly known as Prison Health Services. PHS Correctional Healthcare contracts with the City to provide health services to detainees in DOC facilities and is incorporated and with its principal place of business outside of New York State. On information and belief, PHS Correctional Healthcare is organized under the laws of Tennessee, with its principal place of business in Tennessee. PHS Correctional Healthcare engages in business in New York and is subject to personal jurisdiction in this district. Moreover, at all times relevant hereto, PHS Correctional Healthcare has acted under the supervision, control and direction, and on behalf of the City.

12. Defendant P.H.S. Medical Services, P.C., is a corporation that, on information and belief, contracts with the City to provide health services to detainees in DOC facilities and, on information and belief, is incorporated and with its principal place of business in New York. At all times relevant hereto, P.H.S. Medical Services, P.C., has acted under the supervision, control and direction, and on behalf of the City.

13. During the relevant time period, defendant Trevor Parks, M.D. was the sole shareholder of P.H.S. Medical Services, P.C., and oversaw and supervised the provision of health services to individuals in the custody of DOC. Dr. Parks is sued in his individual capacity. During the relevant time period, Dr. Parks has acted under the supervision, control and

direction, and on behalf of the City.

## FACTS

14. In flat defiance of clear constitutional commands, the City and DOC promulgated, implemented, enforced, and/or failed to rectify a policy, practice and custom of forcing female pre-trial detainees in DOC custody to undergo gynecological examinations without providing any information about the examination and under the threat of punitive treatment should the detainee refuse such examination (the "Forced Exam Policy"). The Forced Exam Policy made forced gynecological examinations of each female pre-trial detainee admission routine; female detainees were never informed of what the exam entails, what purpose it serves and/or what risks attend it, and were informed that they would be punished in the event they question or refuse such exam, or request more information about it.

15. On multiple occasions after 1999, while detained at Rose M. Singer Center ("RMSC") on Rikers Island—the only facility on Rikers Island which generally housed female inmates—Ms. Goldsmith was forced to undergo a gynecological exam without any basis, without informed consent, and under threat of punishment.

16. Pursuant to what was then City and Department of Correction policy, custom and practice, these exams occurred on *each and every* occasion when Ms. Goldsmith was admitted to Rikers Island prior to her admission in January 2008, including but not limited to on or about November 5, 1999, on or about December 1, 1999, on or about February 1, 2000, on or about October 1, 2003, on or about February 4, 2004, and on or about March 11, 2005.

17. When Ms. Goldsmith was admitted to Rikers Island on or about January 7, 2008 and on or about August 15, 2009 she was *not* forced to undergo an exam and was instead given the opportunity to refuse to consent to a gynecological exam.

18. On each occasion prior to 2008, Ms. Goldsmith was forced to undergo a

full gynecological exam, including a pap smear, even where Ms. Goldsmith had received a full exam, including a pap smear, just weeks earlier during a previous admission to Rikers Island.

19. At times during the course of these embarrassing and humiliating forced exams, Ms. Goldsmith witnessed medical staff and correctional officers making offensive jokes about the female detainees' genitals.

20. On each occasion prior to 2008, Ms. Goldsmith was informed that the rule at Rikers Island was that all women had to undergo a gynecological exam. She was informed that the rule was that if any woman refused the gynecological exams that woman would not be housed and would instead be in "lock," i.e. medical isolation.

21. Prior to 2008, Ms. Goldsmith was never given any meaningful opportunity to refuse these invasive medical examinations, nor was she ever given information about what the exam entails, what purpose it serves, or the risks involved, pursuant to the Forced Exam Policy.

22. Ms. Goldsmith received consistent information from RMSC staff concerning the requirement of gynecological exams upon admission, without any opportunity to refuse and regardless of the staff on call, at each of the visits she had to Rikers Island beginning in November 1999 and before her admission in January 2008.

23. The City of New York asserts that it discontinued the policy of nonconsensual gynecological examinations upon admission to DOC jails on or before May 13, 2005. Upon information and belief, the policy continued after that date.

24. Numerous women have described being forced to undergo a nonconsensual gynecological exam at Rikers Island pursuant to the Forced Exam Policy. These women include the female plaintiffs in *McBean, et al. v. City of New York, et. al.*, 02-cv-05426, 03-cv-04114, the plaintiff in *Choquette v. City of New York*, 10-cv-6485, and numerous other

women known to plaintiff and/or her counsel. These women were all told that a gynecological exam was mandatory and that if they refused an exam they would be put in medical isolation and/or not housed (thereby being denied privileges provided to other inmates).

25.     Defendant Dr. Trevor Parks has admitted that in 2005 the City of New York produced an informational document informing female inmates that they had the right to refuse gynecological exams. He further admitted that *after* the City disseminated this informational document in 2005 there was a dramatic *increase* in the number of female inmates refusing such exams.

26.     Moreover, though Defendant Parks has admitted that the Pap smear test in use at the time could not be performed while a woman was menstruating, women were forced to undergo nonconsensual gynecological exams even while menstruating, pursuant to the City's policy of requiring gynecological exams of *all* new female detainees.

27.     Maria Gbur, the Medical Director for Correctional Health Services with the Department of Health and Mental Hygiene, a City agency, admitted that though standard medical protocol only calls for a gynecological exam annually or biennially, the City had a policy of performing gynecological exams on new female detainees at *every* admission, even if a woman—like Ms. Goldsmith—had previously undergone a gynecological exam (or multiple gynecological exams) at Rikers Island within the previous year.

28.     Dr. Parks, as the sole shareholder of PHS Medical Services P.C., which provided medical services to Rikers Island detainees, and the Medical Director at Rikers Island, allowed the continuation of the Forced Exam Policy and/or created the policy. Dr. Parks admitted that he was aware of the allegations of a Forced Exam Policy that were alleged in *McBean, et al. v. City of New York, et. al.*, 02-cv-05426, 03-cv-04114, and admitted that women had been placed in medical isolation for refusing a gynecological exam. Yet Dr. Parks did

nothing to stop or alter the Forced Exam Policy and, as a result, Ms. Goldsmith and other women suffered from this unconstitutional policy.

29. The City has never asserted that there is a medical reason to place women who refuse gynecological exams into medical isolation. It was not until 2006, however, that the City formally changed its medical isolation policy to make clear that only those with communicable diseases should be placed in isolation. One correctional officer who was employed at RMSC since 1997, Theresa Joseph, has admitted that, prior to the 2006 change, whenever a woman refused a gynecological exam she was placed in medical isolation and would not be housed.

30. Mandating female pre-trial detainees to undergo gynecological examinations, without any basis, and/or without informed consent is unconstitutional. Defendants knew that they may not institute, enforce, or permit enforcement of a policy or practice of coercing gynecological exams on female detainees.

31. The City and DOC policy, practice and custom of coercing gynecological exams was promulgated, effectuated, and/or enforced in bad faith and contrary to established law.

32. As a direct result of the unlawful gynecological examinations conducted pursuant to the Forced Exam Policy, plaintiff has suffered damages, including without limitation, mental anguish, pain and suffering.

33. Plaintiff's claims were tolled on July 15, 2002, the date of the filing of a putative class action, *McBean, et al. v. City of New York, et. al.*, 02-cv-05426, 03-cv-04114, which alleged class-wide claims for damages resulting from the Force Exam Policy at DOC facilities. On March 16, 2010 the parties entered into a settlement agreement in *McBean* which provided that: "All putative class claims arising out of forced gynecological exams are hereby

dismissed." This Court finally approved that settlement in an October 22, 2010 order.

## AS AND FOR A FIRST CLAIM FOR RELIEF
42 U.S.C. § 1983

34. Plaintiff repeats and realleges the foregoing paragraphs as if the same were fully set forth at length herein.

35. By implementing, promulgating, and enforcing and/or effectuating a policy, practice and custom pursuant to which the plaintiff was forced to undergo gynecological exams absent informed consent and under the threat of punishment, defendants have deprived plaintiff of rights, remedies, privileges and immunities guaranteed to every citizen of the United States, in violation of 42 U.S.C. § 1983, and of rights guaranteed by the Fourth and Fourteenth Amendments of the United States Constitution, conspired among themselves to do so (taking numerous overt steps in furtherance thereof), and failed to prevent one another from doing so.

36. Defendants acted under pretense and color of state law and in their individual and official capacities and within the scope of their employment. Said acts by said defendants were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers, and said defendants acted willfully, knowingly, and with the specific intent to deprive plaintiff of her constitutional rights secured by 42 U.S.C. § 1983, and by the Fourth, Fifth, and Fourteenth amendments to the United States Constitution.

37. As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiff suffered and continues to suffer psychological pain, suffering and mental anguish.

WHEREFORE, Plaintiff respectfully request judgment against Defendants as follows:

(A) an order granting compensatory damages in an amount to be

determined at trial.

(B) an order awarding punitive damages against all defendants, except for the City of New York, in an amount to be determined at trial.

(C) an order awarding Plaintiff reasonable attorneys' and costs under 42 U.S.C. § 1988.

(D) an order such other further relief as the Court may deem just and proper.

Dated: January 10, 2011
      New York, New York

                                EMERY CELLI BRINCKERHOFF
                                & ABADY LLP

By: _____
     Matthew D. Brinckerhoff
     Elizabeth S. Saylor
     Debra L. Greenberger

     75 Rockefeller Plaza
     New York, N.Y. 10019
     (212) 763-5000

*Attorneys for Plaintiff*