UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
_____

CATHERINE CHOQUETTE,                          OPINION AND ORDER
                        Plaintiff,
          - against -

THE CITY OF NEW YORK, ET AL.,
                        Defendants,            10 Civ. 6485 (JGK)
_____

DAKOTA DUNCAN,
                        Plaintiff,
          - against -

THE CITY OF NEW YORK, ET AL.,
                        Defendants,
_____       11 Civ. 789 (JGK)

VANESSA GIAMALAKIS,
                        Plaintiff,
          - against -

THE CITY OF NEW YORK, ET AL.,
                        Defendants,            11 Civ. 786 (JGK)
_____

ANNETTE POWELL,
                        Plaintiff,
          - against -

THE CITY OF NEW YORK, ET AL.,
                        Defendants,            11 Civ. 787 (JGK)
_____

CLARISSA GOLDSMITH,
                        Plaintiff,
          - against -

THE CITY OF NEW YORK, ET AL.,
                        Defendants,            10 Civ. 5781 (JGK)
_____

LESLINE L. COLDEN,
                        Plaintiff,
          - against -

THE CITY OF NEW YORK, ET AL.,
                        Defendants,            11 Civ. 788 (JGK)
_____

ALICIA ROBINSON,
                        Plaintiff,
          - against -

THE CITY OF NEW YORK, ET AL.,
                        Defendants.            11 Civ. 2926 (JGK)
_____

**JOHN G. KOELTL, District Judge:**

The plaintiffs, Catherine Choquette, Clarissa Goldsmith, Vanessa Giamalakis, Annette Powell, Lesline Colden, Dakota Duncan, and Alicia Robinson ("the plaintiffs") bring seven individual actions under 42 U.S.C. § 1983 asserting violations of their rights under the Fourth and Fourteenth Amendments of the United States Constitution.  Their claims arise from an alleged policy, practice and custom of the New York City Department of Correction ("DOC") of subjecting female detainees to a forced gynecological examination ("gynecological exam") upon admission to DOC custody.  The defendants now move to dismiss all of the plaintiffs' complaints pursuant to Federal Rule of Civil Procedure 12(b)(6) on the grounds that the plaintiffs' claims are time-barred, with the exception of plaintiff Goldsmith's claims for two alleged forced gynecological exams occurring on February 4, 2004 and March 11, 2005.  The common issue on these motions is whether the statute of limitations for these actions was tolled during the pendency of a class action raising these claims on behalf of a class until the class claims were actually dismissed, or whether the toll ceased at an earlier time.

1

## I.

## A.

The following facts alleged in the plaintiffs' complaints are accepted as true for the purposes of this motion to dismiss, unless otherwise indicated.

The plaintiffs are females who were each admitted on at least one occasion to pre-trial detention under DOC custody at the Rose M. Singer Center on Rikers Island, the only facility on Rikers Island that generally housed female inmates. The plaintiffs allege that, pursuant to a policy by the DOC, they were forced to undergo non-consensual gynecological exams each and every time they were admitted to Rikers Island. They further contend that they were not informed of what the exam entailed and were subjected to or threatened with punishment if they questioned or refused the exam. The plaintiffs assert claims based on alleged gynecological exams occurring between November 1999 and April 2006.

## B.

All seven plaintiffs assert that they were putative class members in the consolidated cases McBean v. City of New York, No. 02 Civ. 5426; Cence v. City of New York, No. 03 Civ. 4114; and Ramos v. City of New York, Nos. 02 Civ. 5426, 03 Civ. 4114 ("the McBean litigation" or "McBean"). McBean was a putative

class action commenced on July 15, 2002 on behalf of pre-trial detainees who were allegedly strip-searched and subjected to nonconsensual gynecological examinations upon their admission to Rikers Island.  The original complaint in McBean stated that:

> The proposed class is defined as all women who since 1999: (1) have been charged with misdemeanors or non-criminal offenses in the City of New York; (2) who were detained at Rikers Island Correctional Facility; and (3) who were subjected to defendants' policy, practice and custom of strip searching pretrial detainees: (a) without reasonable suspicion that the arrestee is concealing a weapon or other contraband, and/or in the presence of onlookers or members of the opposite sex; and (b) subjected to a nonconsensual gynecological examination.

(Compl. at ¶ 4 ("McBean Compl."), McBean, No. 02 Civ. 5426 (S.D.N.Y. July 15, 2002), ECF No. 1.)  On October 11, 2002, an amended complaint was filed in McBean which named additional plaintiffs and proposed two separate classes: (1) a class of both male and female pre-trial detainees subjected to DOC's strip search policy; and (2) a class of female detainees subjected to forced gynecological exams.  (Second Am. Compl. at ¶¶ 5-6, McBean, No. 02 Civ. 5426 (S.D.N.Y. Nov. 7, 2002), ECF No. 15.)

On April 27, 2005, the Court entered an Order certifying a settlement class of certain pre-trial detainees who had been strip searched while in DOC custody during the class period ("the 2005 Settlement Class").  McBean v. City of New York, 228 F.R.D. 487, 504 (S.D.N.Y. 2005).  The certified class did not

3

include claims of female detainees allegedly subjected to forced gynecological exams or strip search claims of those arraigned on certain narcotics or weapons-related offenses.  Id. at 490-91. The Court approved this settlement agreement in 2006.  McBean v. City of New York, 233 F.R.D. 377, 393 (S.D.N.Y. 2006).

Certification of the 2005 Settlement Class was approved over the objections of a group of plaintiffs who were excluded from this class ("the Intervenor Plaintiffs").  On February 18, 2004, these plaintiffs moved to intervene in the action, claiming that their interests would be adversely affected by the terms of the proposed settlement.  This motion was granted and the Intervenor Plaintiffs filed an Intervenor Class Action Complaint.  McBean, 228 F.R.D. at 491.  While the initial Intervenor Class Action Complaint did not purport to bring claims on behalf of females allegedly subjected to forced gynecological exams, id., an amended Intervenor Class Action Complaint was filed that did assert gynecological exam class claims.  Specifically, the Intervenor Plaintiffs sought relief on behalf of a putative class of (1) all pre-trial detainees who were illegally strip searched; and (2) all female pre-trial detainees subjected to forced gynecological exams.  (First Am. Intervenor Compl. at ¶¶ 39, 47 ("McBean First Am. Intervenor Compl."), McBean, No. 02 Civ. 5426 (S.D.N.Y. Apr. 7, 2005), ECF No. 67.)  While the Intervenor Plaintiffs failed to oppose

successfully certification of the narrower 2005 Settlement
Class, they continued to pursue claims on behalf of those
plaintiffs that had been excluded.

On October 4, 2007, the Intervenor Plaintiffs and the
defendants entered into a Stipulation and Order agreeing to the
creation of three classes ("the 2007 Settlement Agreement").
These classes consisted of two damages classes of pre-trial
detainees whose strip search claims had not been included in the
2005 Settlement Class and an injunctive class seeking to prevent
the defendants from conducting illegal strip searches in the
future.  (Stipulation of Settlement, Ex. A to Decl. of Elizabeth
S. Saylor at 4 ("2007 Stipulation"), McBean, No. 02 Civ. 5426
(S.D.N.Y. Feb. 1, 2010), ECF No. 222.)  No mention was made in
the 2007 Settlement Agreement of the gynecological exam class.
However, the Agreement contained a "whereas" clause that
provided:  "Whereas, the plaintiffs have a pending action
([McBean]) against City Defendant and others for a variety of
individual and class claims relating to strip search practices
and two individual claims for forced gynecological exams[.]"
(2007 Stipulation at 1.)  The 2007 Settlement Agreement also
provided for certain injunctive relief such as the revision of
DOC policies related to searches of inmates and training of DOC
intake personnel.  (2007 Stipulation at 4-11.)  This Agreement
was preliminarily approved on October 5, 2007 and finally

approved by Court Order signed on February 12, 2010.  McBean v.
City of New York, No. 02 Civ. 5426, 2007 WL 2947448, at *4
(S.D.N.Y. Oct. 5, 2007); Order Approving the 2007 Stipulation
and Order, McBean, No. 02 Civ. 5426 (S.D.N.Y. Feb. 16, 2010),
ECF No. 228.

On August 14, 2009, the Court issued a ruling on a motion
filed by the Intervenor Plaintiffs in July 2007, which had
sought partial summary judgment and certification of two strip
search classes distinct from those created in the 2007
Settlement Agreement ("the 2009 Summary Judgment Decision").
The Court granted certification of one of these classes, and
found defendants liable for damages to this class, but denied
certification of the other class.  McBean v. City of New York,
260 F.R.D. 120, 143 (S.D.N.Y. 2009).  The Court noted that "the
issue of gynecological examinations" was "not at issue in the
present motions."  Id. at 124 n.2.

The parties later entered into a settlement agreement
providing for payment of damages to the two damages classes
specified in the 2007 Settlement Agreement, as well as to the
strip search class certified as part of the 2009 Summary
Judgment Decision ("the 2010 Settlement Agreement").
(Stipulation and Order, Ex. A to Decl. of Elizabeth S. Saylor at
¶ 1 ("2010 Stipulation"), McBean, No. 02 Civ. 5426 (S.D.N.Y.
Mar. 19, 2010), ECF No. 233.)  The 2010 Settlement Agreement

6

provided for the payment of $20,000 to the two individual

plaintiffs asserting gynecological claims (the "GYN

Plaintiffs"), and the claims of those plaintiffs were dismissed

with prejudice.  (2010 Stipulation at ¶¶ 4, 64, 65.)  The 2010

Settlement Agreement also dismissed all gynecological exam class

claims.  It provided that:

> While Plaintiffs initially asserted class claims arising
> out of forced gynecological exams, a class was never
> certified.  All putative class claims arising out of forced
> gynecological exams are hereby dismissed.  All claims by
> the GYN Plaintiffs arising out of forced gynecological
> exams from July 15, 1999 until and including October 4,
> 2007, are hereby dismissed with prejudice.

(2010 Stipulation at ¶ 65.)  The 2010 Settlement Agreement was

preliminarily approved by the Court on March 22, 2010.  (Order

Approving the March 16, 2010 Stipulation of Settlement, McBean,

No. 02 Civ. 5426 (S.D.N.Y. Mar. 22, 2010), ECF No. 237.)  Notice

of this Agreement was sent to class members on May 14, 2010.

(Order Approving Notices and Plan of Administration, McBean, No.

02 Civ. 5426 (S.D.N.Y. May 5, 2010), ECF No. 243.)  The 2010

Settlement Agreement was finally approved on October 22, 2010.

(Order Approving the March 16, 2010 Stipulation of Settlement,

McBean, No. 02 Civ. 5426 (S.D.N.Y. Oct. 22, 2010), ECF No. 294.)

### C.

Each of the plaintiffs in the present actions brought

individual actions seeking relief for the forced gynecological

exams to which they claim they were subjected.[1]  None of the
plaintiffs was a named plaintiff in the <u>McBean</u> litigation.  The
defendants filed a consolidated motion to dismiss six of these
complaints on the grounds that all of the plaintiffs' claims
were time-barred, with the exception of plaintiff Goldsmith's
claims relating to two alleged forced gynecological exams on
February 4, 2004 and March 11, 2005.  After plaintiff Robinson
filed her complaint on April 29, 2011, the defendants also moved
to dismiss her complaint on the grounds that her claims were
time-barred and submitted an unopposed application to have that
motion consolidated with the prior motion directed against the
other six plaintiffs' complaints.

## II.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
<u>McCarthy v. Dun & Bradstreet Corp.</u>, 482 F.3d 184, 191 (2d Cir.
2007).  The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face."  <u>Bell Atl. Corp. v. Twombly</u>, 550

---

[1] Plaintiff Goldsmith filed her complaint on July 30, 2010 and subsequently
filed an Amended Complaint and a Second Amended Complaint.  Plaintiff
Choquette filed her complaint on August 31, 2010 and subsequently filed an
Amended Complaint.  Plaintiffs Powell, Giamalakis, Duncan, and Colden each
filed individual complaints on February 4, 2011.  Plaintiff Robinson filed
her complaint on April 29, 2011.

U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken.  See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); SEC v. Rorech, 673 F. Supp. 2d 217, 221 (S.D.N.Y. 2009).

When it is clear from the face of the complaint that an action is time-barred, the complaint can be dismissed on a motion pursuant to Rule 12(b)(6).  See, e.g., Ghartey v. St. John's Queens Hosp., 869 F.2d 160, 162 (2d Cir. 1989).

### III.

### A.

The defendants argue that the plaintiffs' complaints should be dismissed in their entirety as time-barred, with the exception of two claims by plaintiff Goldsmith for alleged

forced gynecological exams occurring on February 4, 2004 and
March 11, 2005.

The plaintiffs' claims are asserted under § 1983.  Federal
law does not provide a statute of limitations for claims brought
under § 1983; instead, federal courts "should borrow the [state]
general or residual statute [of limitations] for personal injury
actions."  Owens v. Okure, 488 U.S. 235, 250 (1989).  In New
York, the applicable limitations period is three years.
Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 225 (2d Cir.
2004).  The alleged injuries that form the basis of the
plaintiffs' complaints all occurred before April 1, 2006, more
than three years before the first complaint in these actions was
filed in July 2010.  Thus, absent any toll, all of the
plaintiffs' claims would be time-barred.

The plaintiffs argue, however, that their claims have been
tolled since July 15, 2002, when the putative class action
complaint was filed in McBean, based on the tolling doctrine
articulated in American Pipe & Construction Co. v. Utah, 414
U.S. 538 (1974).  In American Pipe, the Supreme Court held that
"the commencement of a class action suspends the applicable
statute of limitations as to all asserted members of the class
who would have been parties had the suit been permitted to

10

continue as a class action."[2]  Id. at 554.  The plaintiffs contend that they were putative members of the class in McBean and that the statute of limitations on their claims was therefore tolled by the filing of the McBean complaint.[3]

The defendants do not dispute that the plaintiffs were members of the putative class in McBean and that the pendency of that action therefore tolled the statute of limitations on the plaintiffs' claims for some period of time.  Indeed, it is plain that the plaintiffs were members of the asserted class in McBean, given that the original complaint and the First Amended Intervenor Complaint both asserted claims on behalf of women subjected to forced gynecological exams.  (McBean Compl. at ¶ 4; McBean First Am. Intervenor Compl. ¶¶ 39, 47.)  However, the

---

[2] The Supreme Court's decision in American Pipe concerned plaintiffs who sought to intervene in the putative class action after denial of class certification and beyond the limitations period.  However, in Crown v. Parker, the Court later clarified that tolling also applies to plaintiffs who seek to file separate, individual actions, not just to plaintiffs who seek to intervene in a pending action.  462 U.S. 345, 350 (1983).

[3] When analyzing the statute of limitations for a § 1983 action, federal courts apply state, rather than federal, tolling provisions.  Bd. of Regents v. Tomanio, 446 U.S. 478, 483 (1980).  While American Pipe tolling is a federal doctrine, the Court of Appeals for the Second Circuit has held that American Pipe tolling is part of New York common law and has applied American Pipe tolling to § 1983 actions brought in New York.  Cullen v. Margiotta, 811 F.2d 698, 719-21 (2d Cir. 1987) ("[T]he New York courts have . . . long embraced the principles of American Pipe.") (collecting cases), overruled on other grounds Agency Holding Corp. v. Malley-Duff & Assocs., Inc., 483 U.S. 143 (1987); Wahad v. City of New York, No. 75 Civ. 6203, 1999 WL 608772, at *5 n.5 (S.D.N.Y. Aug. 12, 1999) ("New York law recognizes the same tolling principles held applicable in American Pipe.").  It is also appropriate to apply federal case law interpreting the scope and application of American Pipe tolling, and both parties urge the Court to do so here.  See Wahad, 1999 WL 608772, at *5 n.5 (applying, in § 1983 case, federal case law interpreting American Pipe tolling and noting that "[f]ederal cases discussing tolling under American Pipe apply to New York tolling principles as well").

parties disagree about when American Pipe tolling ended for the plaintiffs' claims.  The plaintiffs contend that the toll continued until the gynecological exam class claims were dismissed from the McBean litigation.  The plaintiffs argue that this occurred on October 22, 2010, when the Court finally approved the 2010 Settlement Agreement, which stated that "[a]ll putative class claims arising out of forced gynecological exams are hereby dismissed" (2010 Stipulation at ¶ 65), or, at the earliest, on March 22, 2010, when the 2010 Settlement Agreement was preliminarily approved by the Court.  According to the plaintiffs, it was only upon approval of this Settlement Agreement that the plaintiffs were no longer justified in relying on the McBean litigation to advance their claims.  Measuring the end of the toll from either October 22, 2010 or March 22, 2010, all of the plaintiffs' claims would be timely.

The defendants argue, however, that American Pipe tolling ended on October 4, 2007, when the parties entered into the 2007 Settlement Agreement.  The defendants point to the "whereas" clause in this Agreement, which states that "[t]he plaintiffs have a pending action ([McBean]) against City Defendant and others for a variety of individual and class claims relating to strip search practices and two individual claims for forced gynecological exams[.]" (2007 Stipulation at 1.)  The defendants contend that this language indicates that all

gynecological exam class claims had been dropped from the McBean litigation and that these claims were only being pursued on an individual basis.  The defendants also emphasize that the 2007 Settlement Agreement stipulates to the creation of three classes pertaining exclusively to strip search claims but makes no mention of gynecological exam class claims.  According to the defendants, this further indicates that class counsel had abandoned the gynecological exam class claims.  Thus, the defendants contend that, as of October 4, 2007, the date the parties entered into the 2007 Settlement Agreement, the plaintiffs were on notice that the McBean litigation was no longer pursuing their claims.  As a result, the defendants argue, American Pipe tolling for the plaintiffs' claims ended on this date.  The parties agree that, measuring the end of the toll from this date, all of the plaintiffs' claims would be time-barred except plaintiff Goldsmith's claims for gynecological exams occurring on February 4, 2004 and March 11, 2005.

**B.**

In making the argument that the 2007 Settlement Agreement triggered the cessation of American Pipe tolling for the plaintiffs' claims, the defendants rely on several cases from other jurisdictions.  See Smith v. Pennington, 352 F.3d 884 (4th

Cir. 2003); Sawtell v. E.I. du Pont de Nemours & Co., 22 F.3d
248 (10th Cir. 1994); In re Microsoft Corp. Antitrust Litig.,
No. MDL 1332, 2005 WL 906364 (D. Md. Apr. 18, 2005); Ganousis v.
E.I. du Pont de Nemours & Co., 803 F. Supp. 149 (N.D. Ill.
1992).  According to the defendants, these cases stand for the
proposition that, when class counsel engages in conduct
unequivocally indicating that certain plaintiffs' claims are no
longer being pursued as part of the class action litigation,
American Pipe tolling ends for those excluded plaintiffs'
claims.  The defendants contend that class counsel engaged in
such unequivocal conduct here when it entered into the 2007
Settlement Agreement.

The Court of Appeals for the Second Circuit has not adopted
the rule advocated by the defendants:  namely, that conduct by
class counsel indicating an intention to abandon certain
plaintiffs' claims can trigger cessation of American Pipe
tolling before these claims have actually been discontinued.
Instead, both the Supreme Court and courts in this Circuit have
indicated that American Pipe tolling ends when a plaintiff opts
out of the class or a class certification decision of the court
definitively excludes that plaintiff.  For example, in In re
Worldcom Securities Litigation, 496 F.3d 245 (2d Cir. 2007), the
Court of Appeals for the Second Circuit explained that:  "The
theoretical basis on which American Pipe rests is the notion

14

that class members are treated as parties to the class action

'until and unless they received notice thereof and chose not to

continue.'"   Id. at 255 (quoting American Pipe, 414 U.S. at

551).  Accordingly,

> [b]ecause members of the asserted class are treated for
> limitations purposes as having instituted their own
> actions, at least so long as they continue to be members of
> the class, the limitations period does not run against them
> during that time.  Once they cease to be members of the
> class — for instance, when they opt out or when the
> certification decision excludes them — the limitation
> period begins to run again on their claims.

Id.  The Court in In re Initial Public Offering Securities

Litigation ("In re IPO I"), 617 F. Supp. 2d 195 (S.D.N.Y. 2007),

similarly indicated that American Pipe tolling continues until a

class certification decision of the court excludes the claims of

the plaintiff in question.  The court rejected the defendants'

argument that American Pipe tolling ended for all 310 putative

classes in the litigation because the Second Circuit Court of

Appeals had issued a decision vacating certification of 6 of

these classes.  Id. at 199.  The court explained that, for the

remaining putative classes not subject to the Court of Appeals'

ruling, "American Pipe tolling is plainly still in effect in all

of those cases.  The tolling period began upon the filing of the

class action complaints in those actions and continues until

class certification is denied in those cases."  Id.; see also

Crown, 462 U.S. at 354 ("Once the statute of limitations has

15

been tolled [under American Pipe], it remains tolled for all
members of the putative class until class certification is
denied.").  Indeed, the defendants do not cite any case from
this Circuit finding that American Pipe tolling ceased for a
plaintiff's claims prior to the denial of class certification or
an opt out by that plaintiff.  However, the defendants contend
that the Second Circuit Court of Appeals has not rejected the
argument they assert but has simply never addressed this
question.  The defendants urge the Court to adopt the rule they
contend has been applied in other jurisdictions and to find that
American Pipe tolling ended for the plaintiffs' claims when
class counsel allegedly indicated an intention to drop
gynecological exam class claims from the McBean litigation by
entering into the 2007 Settlement Agreement.

        The rule the defendants urge the Court to adopt is
unpersuasive and inconsistent with the policies underlying
American Pipe tolling.  First, many of the cases upon which the
defendants rely do not actually stand for the proposition that
class counsel can trigger cessation of American Pipe tolling by
indicating an intention to drop certain claims from the
litigation, before these claims have actually been discontinued.
In justifying this rule, the defendants rely upon a statement in
Pennington that, "when a plaintiff moves for class certification
by asserting an unambiguous definition of his desired class that

is more narrow than is arguably dictated by his complaint, his asserted class for tolling purposes may be limited to that more narrow definition." 352 F.3d at 894. However, in Pennington, it was unclear whether the original complaint encompassed the claims of the plaintiffs seeking the toll, and it was only upon the filing of the class certification motion that it became clear that these plaintiffs were not in fact members of the asserted class. The Court of Appeals for the Fourth Circuit reasoned that, while a broad reading of the complaint would arguably encompass the plaintiffs seeking the toll, the class certification motion eliminated any ambiguity by defining the class in narrow terms. Id. at 893-94. Because the court was not "confined to examine only the complaint in determining the scope of the class [the plaintiff] sought to certify[,]" it was appropriate to rely upon the unambiguous class definition articulated in the class certification motion to determine which plaintiffs were entitled to American Pipe tolling. Id.

Similarly, in Sawtell, another case relied upon by the defendants, the Court of Appeals for the Tenth Circuit confronted the issue of whether the plaintiff in question was a member of the putative class asserted in the original complaint. The court concluded that the plaintiff was not, because she was a New Mexico resident and the class definition should be

17

construed as limited to Minnesota residents.  22 F.3d at 253-54.

In reaching this conclusion, the court explained that:

> The evidence before this court indicates the class was
> intended to be Minnesota residents only.  Although the
> complaints filed in the Minnesota class actions were broad
> in their descriptions of the class, when the plaintiffs
> moved for class certification a month later, the narrowness
> of the class definitions was clear.

Id. at 253.  Thus, in both Sawtell and Pennington, the class

certification motion triggered an end to American Pipe tolling

not because it "abandoned" the claims of plaintiffs who were

undisputedly members of the putative class but instead because

it clarified that these plaintiffs were never members of the

putative class.  In this case, each of the present plaintiffs

was indisputably a member of the class that the McBean

plaintiffs sought to represent from the filing of the very first

complaint.  Thus, the cases relied upon by the defendants cannot

be read to support their argument that class counsel here

triggered an end to American Pipe tolling for the plaintiffs'

claims by entering into the 2007 Settlement Agreement.

Moreover, the rule the defendants urge the Court to adopt

is inconsistent with the policies that American Pipe and its

progeny sought to promote.  From the standpoint of absent

plaintiffs, such plaintiffs have a right to rely on a class

action pursuing their claims until there is a definitive

decision, whether by opt-out or denial of class certification,

that ends that representation.  <u>See, e.g.</u>, <u>Crown</u>, 462 U.S. at
352-53 ("[R]ule 23 both permits and encourages class members to
rely on the named plaintiffs to press their claims."); <u>Wahad</u>,
1999 WL 608772, at *6 ("Critical in both [<u>American Pipe</u> and
<u>Crown</u>] were notions of reliance and efficiency.  More
specifically, the statute of limitations is tolled because
plaintiffs involved in a class action must be able to rely on
the existence of the class, prior to a decision on
certification, to protect their rights.").  In this case, for
example, there were various shifting class definitions and
classes, and a plaintiff who was part of the original class
should not have been required to bring her own action until
there was a definitive decision that her interests were not
being pursued.

     The rule advocated by the defendants is also unnecessary to
protect the legitimate interests of defendants as articulated in
<u>American Pipe</u>.  In <u>American Pipe</u>, the Court concluded that the
rule it articulated was consistent with "policies of ensuring
essential fairness to defendants" because the commencement of
the putative class action

> notifies the defendants not only of the substantive claims
> being brought against them, but also of the number and
> generic identities of the potential plaintiffs who may
> participate in the judgment.  Within the period set by the
> statute of limitations, the defendants have the essential
> information necessary to determine both the subject matter
> and size of the prospective litigation . . . .

414 U.S. at 554-55.  A rule by which tolling ends only upon a class certification decision by the court or an opt-out by a plaintiff is consistent with these policies and poses no risk of "unfair surprise" to the defendant.  Crown, 462 U.S. at 353. When the initial complaint is clear with respect to the definition of the class, the defendants are placed on notice of the nature and scope of the claims asserted against them.  Until a putative class member opts out of the class or the court denies certification, these claims are not foreclosed from the litigation and the defendants remain aware that these claims could be pursued.  It is only when there is ambiguity regarding the class definition asserted in the complaint that defendants are justified in relying upon the class certification motion to indicate the absence of a particular class in the litigation. In this case, however, there was no uncertainty about the potential gynecological exam class, given that it was pleaded in both the original complaint and the First Amended Intervenor Complaint, and it therefore was not necessary to look to the 2007 Settlement Agreement to resolve ambiguity in the class definition.  Thus, the argument that a defendant's legitimate interest in notice requires the rule advanced by the defendants is unpersuasive.

Moreover, a rule by which actions by class counsel could trigger an end to tolling would be contrary to American Pipe's aim of curtailing the "unnecessary filing of repetitious papers and motions" and "the multiplicity of activity which Rule 23 was designed to avoid . . . ."  414 U.S. at 550-51.  Without the clarity of requiring a class certification decision by the court and the accompanying notice procedures before tolling ends, putative class members would be encouraged to file separate protective actions to assure that their claims would not be time-barred.  This was precisely the result that American Pipe and its progeny sought to avoid.  See Crown, 462 U.S. at 350-51 ("A putative class member who fears that class certification may be denied would have every incentive to file a separate action prior to the expiration of his own period of limitations.  The result would be a needless multiplicity of actions — precisely the situation that Federal Rule of Civil Procedure 23 and the tolling rule of American Pipe were designed to avoid.").  Thus, the defendants' argument that conduct by class counsel unequivocally indicating an intention to abandon certain plaintiffs' claims can trigger an end to tolling is unpersuasive and inconsistent with the underlying rationale of American Pipe.

Even under the defendants' incorrect rule, the 2007 Settlement Agreement cannot be said to have constituted such unequivocal notice that the gynecological exam class claims were

not being pursued.  The "whereas" clause in this Agreement was
not a sufficient basis for the defendants to rely upon the
absence of a gynecological exam class.  The defendants were on
notice at the outset of the McBean litigation that gynecological
exam class claims were being pursued.  The "whereas" clause did
not have the effect of dismissing these claims and did not
foreclose the plaintiffs from pursuing these claims.  See
Abraham Zion Corp. v. Lebow, 761 F.2d 93, 103-04 (2d Cir. 1985)
("Although a statement in a 'whereas' clause may be useful in
interpreting an ambiguous operative clause in a contract, it
cannot create any right beyond those arising from the operative
terms of the document." (internal quotation marks and citation
omitted)).  Thus, until the gynecological exam class claims were
actually dismissed from the litigation upon approval of the 2010
Settlement Agreement, the defendants remained on notice that
these claims could continue to be pursued and there would have
been no "unfair surprise" had these claims indeed been pursued.
Crown, 462 U.S. at 353.

     Moreover, until the gynecological exam class claims were
actually dismissed, they remained in the case and could have
been pursued.  It was therefore reasonable for the plaintiffs to
rely on the McBean litigation to advance their claims.  See In
re IPO I, 617 F. Supp. 2d at 200 (decision vacating class
certification of six focus cases did not trigger end to American

Pipe tolling for those cases because there was "no definitive decision that the six focus cases cannot proceed as a class action" and it therefore "remain[ed] reasonable for [the plaintiffs] to rely on those actions" to pursue their claims); In re Initial Pub. Offering Sec. Litig. ("In re IPO II"), 544 F. Supp. 2d 277, 301 (S.D.N.Y. 2008) ("Because the possibility of a class that includes [the plaintiff] remains open, tolling of the statute of limitations  . . . remain[s] in effect.").

The fact that the 2007 Settlement Agreement stipulated to the certification of three strip search classes, but not to the certification of a gynecological exam class, was not a sufficient basis to have put the plaintiffs on notice of, or to have entitled the defendants to rely upon, the absence of a gynecological exam class.  The 2007 Settlement Agreement did not purport to resolve all outstanding issues pertaining to all putative classes in the litigation.  Indeed, the Agreement did not mention two classes for which the plaintiffs had previously moved for certification; yet, these classes plainly were not dismissed or abandoned, given that the Court certified one of these classes and denied certification of the other in the 2009 Summary Judgment Decision.  McBean, 260 F.R.D. at 143.  Thus, the fact that the gynecological exam class claims were not addressed in the 2007 Settlement Agreement did not evince a clear intent to abandon these claims, given that other putative

23

classes remained pending that also were not addressed in that Agreement.

Furthermore, it would not have been reasonable for the defendants to rely on the 2007 Settlement Agreement to definitively exclude gynecological class claims before this Agreement was finally approved by the Court, which did not occur until February 2010.  Such reliance would have been unreasonable because, until final approval of the Agreement, the Court was free to reject the Agreement or allow others to proceed on behalf of the excluded class members.  Indeed, the Court did just that earlier in the McBean litigation:  while the 2005 Settlement Agreement did not include gynecological exam claims and certain other strip search claims, different counsel intervened and was permitted to pursue the claims of excluded plaintiffs, thus continuing American Pipe tolling for these plaintiffs' claims.  McBean, 228 F.R.D. at 491, 505 n.12. Accordingly, the proposed 2007 Settlement Agreement between the parties could not have triggered an end to American Pipe tolling prior to final approval of that Agreement by the Court.

Thus, the 2007 Settlement Agreement did not have the effect of triggering an end to American Pipe tolling for the plaintiffs' claims.  Instead, tolling did not end until the gynecological class claims were actually dismissed from the litigation upon final approval of the 2010 Settlement Agreement

24

on October 22, 2010.  Measured from this date, all of the plaintiffs' claims are timely.  Accordingly, the defendants' motions to dismiss the plaintiffs' complaints as time-barred are **denied**.

## CONCLUSION

The Court has considered all of the arguments of the parties.  To the extent not specifically addressed above, the remaining arguments are either moot or without merit.  For the reasons explained above, the defendants' motions to dismiss the plaintiffs' complaints are **denied**.  The Clerk is directed to close all pending motions in Case Nos. 10 Civ. 5781, 11 Civ. 789, 11 Civ. 786, 11 Civ. 787, 10 Civ. 6485, 11 Civ. 788, and 11 Civ. 2926.

**SO ORDERED.**

Dated:    New York, New York
          March 17, 2012

John G. Koeltl
United States District Judge